# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

In re:

YARMYN FELIBERTY,

Debtor

Chapter 7
Case No. 12-31819

## MEMORANDUM OF DECISION

Before the Court is the "Trustee's Motion to Compel Turnover" (the "Turnover Motion") filed by David W. Ostrander, the Chapter 7 trustee (the "Trustee") in this case. Through the Turnover Motion, the Trustee asks the Court to order Yarmyn Feliberty (the "Debtor") to turn over to the Trustee a portion of the proceeds she received from the prepetition settlement of a personal injury action. Because the Trustee's entitlement to the proceeds in this instance derives from his position as a lienholder pursuant to 11 U.S.C. § 551, the Court must determine whether, and to what extent, the holders of the liens avoided by the Trustee had a secured interest in the proceeds.

I.     FACTS AND POSITIONS OF THE PARTIES

The Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[1] on December 13, 2012. On the schedules as originally filed, and as later amended, the Debtor disclosed her interest in the proceeds remaining from her prepetition settlement of a personal injury claim (the "Settlement,"

---

[1] See 11 U.S.C. § 101 et seq.

1

the "Settlement Proceeds"), which she claimed as entirely exempt pursuant to 11 U.S.C. §§ 522(d)(11)(D) and (d)(5).[2] The Debtor also indicated that two entities held liens against the proceeds of the Settlement as a result of their provision of medical services in connection with the injury (the "Medical Liens," "Medical Lienholders"). And on her statement of intention with regard to those secured claims, the Debtor indicated that she intended to avoid the liens by employing 11 U.S.C. § 522(f).

Debtor's counsel, Attorney John Roden, represented the Debtor in both the personal injury suit and in the bankruptcy case. Prepetition, Attorney Roden distributed $3,500.00 from the total $20,000.00 Settlement Proceeds to the Debtor and made additional distributions to himself for fees and expenses incurred in connection with the personal injury case, leaving $8,516.59 in Settlement Proceeds remaining at the time the bankruptcy case was filed. Postpetition, Attorney Roden disbursed an additional $400 to the Debtor, and ultimately turned over the remaining $8,116.59 to the Trustee.

On April 11, 2013, the Trustee filed an adversary proceeding (the "Adversary Proceeding") against both the Medical Lienholders (Baystate Medical Center, Inc. and Boston Medical Center Health Plan, Inc.) and the Debtor. As to the Medical Lienholders, the Trustee alleged that their attempts to assert liens in the Settlement Proceeds were statutorily deficient. Accordingly, the Trustee sought a judgment avoiding the Medical Liens pursuant to 11 U.S.C. § 544,[3] but preserving them for the benefit of the bankruptcy estate pursuant to § 551. As to the Debtor, the Trustee sought

---

[2] The Trustee has not objected to the exemptions the Debtor claimed in the Settlement Proceeds, and the time for filing any such objection has now passed.

[3] "The purpose of [§ 544] is to cut off unperfected security interests, secret liens, and undisclosed prepetition claims against the debtor's property as of the commencement of the case." Ostrander v. Gardner (In re Millivision, Inc.), 331 B.R. 515, 522 n.12 (Bankr. D. Mass. 2005), aff'd 474 F.3d 4 (1st Cir. 2007) (quoting Collier on Bankr. (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005) ¶ 544.03).

2

a judgment subordinating her exemptions in the Settlement Proceeds to the avoided liens. Neither the Medical Lienholders nor the Debtor filed an answer in the Adversary Proceeding. Each of the defendants was defaulted, and a default judgment as to all defendants was entered, upon the Trustee's motion, on June 25, 2013 (the "Default Judgment"). The Default Judgment provides:

> Default was entered against the Defendants on June 4, 2013.
>
> Upon motion of the Plaintiff, judgment is hereby entered in favor of the Plaintiff against the Defendants as follows:
>
> IT IS HEREBY:
>
> **ORDERED** that the liens of Baystate Medical Center, Inc. and Boston Medical Center Health Plan, Inc., are avoided and preserved for the benefit of the Bankruptcy Estate; and
>
> **ORDERED** THAT THE Debtor's exemptions are subordinated to the avoided liens.

Default Judgment, Adversary Proceeding No. 13-3027, ECF No. 15.

On July 19, 2013, the Trustee filed the Turnover Motion. Although Attorney Roden has turned over $8,116.59, the Trustee contends that the $3,900.00 previously paid to the Debtor (largely prepetition) should not have been disbursed, as it was subject in priority to the Medical Liens. According to the Trustee, since pursuant to the default judgment those liens have been avoided and preserved for the benefit of the bankruptcy estate, the Debtor is obligated to disgorge those amounts to the Trustee.[4]

---

[4] Putting aside, for the moment, the $400 paid to the Debtor postpetition (apparently in error, see Debtor's Objection, July 30, 2013, ECF No. 45; Trustee's Brief, Sept. 26, 2013, ECF No. 54), the portion of the Settlement Proceeds sought by the Trustee in the Turnover Motion would not otherwise be property of the bankruptcy estate. The Debtor's original and amended schedules do not indicate that she remained in possession of the prepetition payment at the time the bankruptcy petition was filed, and the Trustee does not allege that she held any of those funds when the case was commenced. He asserts his right to payment based on his status as lienholder with a claim on the funds. Accordingly, it is immaterial to the matter presently before the Court that the Default Judgment provided that the Debtor's exemptions are subordinated to the Trustee's claim over the Settlement Proceeds – the exemptions relate only

3

The Trustee further maintains that if the Debtor fails to turn over the prepetition payments, Attorney Roden should be surcharged for the requested amount, since Massachusetts law imposes such liability on a person with knowledge of a medical lien who nonetheless transfers settlement proceeds to an entity other than a lienholder.

The Debtor objected to the Turnover Motion on grounds that the Medical Liens were never valid as to the Debtor or the Settlement Proceeds, because the Medical Lienholders did not comply with the requisite statutory requirements. According to the Debtor, then, neither she nor Attorney Roden are required to disgorge the prepetition payments, as, although the Default Judgment preserves the Medical Liens for the benefit of the bankruptcy estate, there were never any valid liens that could be preserved.

After a hearing, and the opportunity for further briefing, the Court took the matter under advisement.[5]

II.   DISCUSSION

Avoidance of a lien under 11 U.S.C. § 544 (and its preservation under § 551) grants the Trustee (on behalf of the bankruptcy estate) the rights of the lienholder, but does not confer any rights beyond those the lienholder would have under relevant nonbankruptcy law. See Carvell v. Bank One, Lafayette, N.A. (In re Carvell), 222 B.R. 178, 180 (B.A.P. 1st Cir. 1998). Since the Medical Liens at issue in this case are alleged to have arisen under Massachusetts statutes, the Court must look to Massachusetts law to evaluate the Trustee's rights now that he stands in the shoes of the Medical

---

to the Debtor's right to retain property that would otherwise be estate property, not to property validly dissipated prepetition.

[5] While the Trustee filed a further brief in support of the Turnover Motion, the Debtor did not.

4

Lienholders.  See In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 6 (1st Cir. 2001) (quoting Butner v. United States, 440 U.S. 48, 55 (1979)) ("[p]roperty interests are created and defined by state law")

By statute, Massachusetts providers of medical services to an individual injured in an accident may be entitled to a lien for the value of those services upon any damages or settlement proceeds received by the injured person on account of the accident (the "Medical Lien Statute").  See Mass. Gen. Laws ("MGL") ch. 111, § 70A.[6] But medical liens are valid under Massachusetts law only if the medical care provider "has satisfied the requirements of these statutes," Blue Cross & Blue Shield of Mass., Inc. v. Trull, 3 Mass. L. Rptr. 599, *5 (Mass. Super. Ct. 1995), since enforcement of a statutory lien in Massachusetts requires "strict compliance with the statutory specifications," E. Coast Steel Erectors, Inc. v. Ciolfi, 632 N.E. 2d 397, 400, 417 Mass. 602 (1994) (mechanic's lien).[7]

Both the Trustee and the Debtor agree that neither Medical Lienholder complied

---

[6] Section 70A of the Medical Lien Statute provides, in relevant part, that a medical provider providing services to persons injured in an accident:

> . . . shall, subject to the provisions of section seventy B, have a lien for the reasonable and necessary charges of such hospital, . . . upon the net amount payable to such injured person . . . out of the total amount of any recovery or sum had or collected or to be collected, whether by judgment or by settlement or compromise, from another person as damages on account of such injuries. . . .

MGL ch. 111, § 70A.

[7] There is very little relevant, on-point case law involving the Medical Lien Statute.  However, the more prolific writings regarding the statutory mechanic's lien make clear that strict compliance is required for the enforcement of a statutory lien in Massachusetts.  See Nat'l Lumber Co. v. United Cas. & Sur. Ins. Co., Inc., 802 N.E. 2d 82, 85, 440 Mass. 723 (2004) ("A mechanic's lien is a statutory creation and can be enforced only by strict compliance with the statute.") (citations omitted); Nat'l Lumber Co. v. Lombardi, 834 N.E. 2d 267, 269 (Mass. App. Ct. 2005) ("A mechanic's lien is not a common-law right but a creature of statute, which 'compels strict compliance in order to obtain relief.'") (quoting Mullen Lumber Co. v. Lore, 537 N.E. 2d 123, 125, 404 Mass. 750 (2005)).

with the statutory requirements for establishing a lien prescribed under § 70B of the Medical Lien Statute. See MGL ch. 111 § 70B.[8] And having reviewed the purported notices of lien issued by the Medical Lienholders, see Trustee's Brief Ex. A (Notice of Hospital Lien), Ex. D (Notice of Lien), the Court agrees that they are not in compliance with the statute. Thus, under Massachusetts law, the Medical Liens are invalid.

But the Trustee argues that, even though the Medical Lienholders did not comply with the Medical Lien Statute, "[b]etween the Debtor and the purported lien holder, the medical liens *were* valid." Trustee Brief 5 ¶ 24 (emphasis supplied). In support of this assertion, the Trustee analogizes this case to the avoidance and preservation of an unperfected, consensual security interest. According to the Trustee, the Debtor acknowledged her responsibility to pay for medical services at the time she received them, and scheduled the Medical Lienholders as undisputed secured claimants, amounting to an "admi[ssion]" of the validity of the Medical Liens. Trustee's Brief 5 ¶ 25. The Trustee thus maintains that, by avoiding and preserving the Medical Liens, he can now enforce them against the Debtor and, if necessary, the Debtor's Attorney.[9]

---

[8] Section 70B requires a medical care provider, "prior to any such judgment, settlement or compromise," to send

> a written notice containing the name and address of the injured person, the date of the accident, the name and location of the provider of hospital, medical or dental services, the name of the person alleged to be liable to the injured person for the injuries received and, if applicable, the name and address of the health maintenance organization, or the hospital, medical, or dental service corporation . . . to such injured person, to his attorney, to the person alleged to be liable to such injured person for the injuries sustained and to any insurance carrier which has insured such person against liability.

MGL ch. 111, § 70B.

[9] The Trustee argues that, to the extent the Debtor does not turn over the Settlement Proceeds received prepetition, Attorney Roden should be ordered to do so, since § 70C of the Medical Lien Statute imposes liability to a lienholder on "[a]ny person who pays over any money upon which there is a lien as provided in section seventy A of which he has received notice as

6

But the liens at issue in this case are *not* consensual liens and therefore cannot be fairly analogized to UCC Article 9 security interests. While the Debtor may have acknowledged her responsibility to pay for medical services at the time care was rendered,[10] such acknowledgment does not equate to the creation ("attachment") of a security interest. Nor does her purported "admission" that the Medical Liens are secured claims carry the day.

> "Attaching" is the act of coming into existence while "perfecting" relates to the doing of some additional act required to make the security interest effective as against third parties. . . . Perfection of a security interest is not required for the security interest to be effective against the debtor. As to the debtor, it is only required that the security interest have attached.

Lawrence's Anderson on the Uniform Commercial Code, 8A Anderson U.C.C. § 9-203:250 (3d ed.). Thus, an unperfected security interest avoided under § 544 remains enforceable as to the debtor, but only *so long as the security interest has attached.*

In some states, similar medical lien statutes provide for the creation (attachment) of a medical lien at the time medical services are rendered, requiring the creditor to take additional steps to perfect the lien. See, e.g., St. Luke's Hosps. of Fargo, Inc. v. Smith (In re Smith), 119 B.R. 714, 722 (Bankr. D.N.D. 1990). A statutory lien structured in this way may be subject to avoidance under § 544 if the lien has attached, but has not been perfected. The lien, validly created though unperfected, may then be preserved under § 551 as an enforceable lien against the Debtor. See, e.g. Great Southwest Supply Co. of Texas, Inc. v. Ernest & Assocs., Inc. (In re Ernest & Assocs., Inc.), 59 B.R. 495, 497 (Bankr. W.D. Tex. 1985) (where statutory materialman's lien was attached and effective

---

provided in section seventy B." MGL ch. 111, § 70D. Attorney Roden admits that he received the "notices of lien" sent by the Medical Lienholders, but against asserts in his defense the lienholders' noncompliance with § 70B.

[10] The Trustee did not submit any evidence to support this assertion, nor did he request an evidentiary hearing.

against the debtor, failure to properly perfect the lien resulted in avoidance in debtor's bankruptcy case); see also In re Cole, 205 B.R. 668, 672 (Bankr. D. Mass. 1997) (noting a distinction, with regard to statutory federal tax liens, "between whether an IRS lien exists and whether it can be enforced (is 'valid') against a particular creditor or purchaser").

But if the creditor's failure to comply with statutory requirements involves not the *perfection* of a statutory lien, but its *creation*, then, under Massachusetts law, the lien does not attach. See, e.g., Street Lumber Co. v. Sullivan, 87 N.E. 905, 906, 201 Mass. 484 (1909) (where creditor asserting lien for materials did not comply with statutory requirements, there was "no foundation for the petitioner's lien" and "it never attached"). In other words, compliance with statutory requirements is required not only for a statutory lien to be effective against third parties or subsequent purchasers, see, e.g., Nat'l Lumber Co. v. LeFrancois Const. Corp., 723 N.E. 2d 10, 430 Mass. 663 (2000), but is also required to make the lien enforceable against the debtor, see, e.g., Lombardi, 834 N.E. 2d at 270 ("[F]ailure to comply normally results in dissolution of the lien, . . . *or in failure of the lien to attach.*") (quoting Mullen, 537 N.E. 2d at 125) (emphasis supplied); Ng Bros. Const., Inc. v. Cranney, 766 N.E. 2d 864, 436 Mass. 638 (2002) (mechanic's lien unenforceable against homeowners where creditor failed to comply with statutory requirements); Street Lumber, 87 N.E. at 906.

The Medical Lien Statute does not contain separate requirements for the creation and perfection of a medical lien. Like many statutory liens, liens under the Massachusetts Medical Lien Statute "are created and perfected by the same act." 229 Main Street, 262 F.3d at 9. And the act required by the statute to effectively create (and perfect) a statutory Medical Lien is the sending of a written notice that complies with

§ 70B.  See MGL ch. 111, § 70A (expressly stating that entitlement to a lien under that section is "subject to the provisions of section seventy B"); § 70B (providing that a lien for medical services "shall take effect *if*" the requisite notice is sent prior to judgment, settlement, or compromise) (emphasis supplied).

Because the notices of lien sent by the Medical Lienholders did not comply with §70B of the Massachusetts Medical Lien Statute, no lien under § 70A was ever created to attach to the Settlement Proceeds.  Accordingly, the Default Judgment entered in the Adversary Proceeding does not entitle the Trustee to a turnover of the funds received by the Debtor prepetition.  The liens which were preserved for the benefit of the bankruptcy estate never existed.[11]

III.    CONCLUSION

For all the foregoing reasons, the Turnover Motion will be DENIED.  An order in conformity with this Memorandum shall issue forthwith.

DATED: January 13, 2014            By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge

---

[11] Accordingly, the Debtor did not have to seek avoidance of the liens in order to preserve her exemption.  At any rate, if the liens *were* valid, they would not be subject to avoidance under § 522(f) of the Bankruptcy Code, as that section applies only to judicial, and not statutory, liens. See Smith v. Botzet (In re Smith), 401 B.R. 674, 681 (Bankr. E.D. Pa. 2009); 11 U.S.C. § 522(f).